UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

In re
**JEFFREY L. ALLEN AND**
**RITA M. ALLEN,**
    Debtors

Chapter 7
Case No. 04-12655-JNF

## MEMORANDUM

### I.   INTRODUCTION

The matter before the Court is the "Chapter 7 Trustee's Second Set of Objections to Claims" (the "Objection to Claims"). Mark G. DeGiacomo, the Chapter 7 Trustee (the "Trustee") of the debtors, Jeffrey L. Allen ("Allen") and Rita M. Allen (collectively, the "Debtors") objects to the amended priority proof of claim filed by Allen on March 27, 2006 asserting amounts due to the Internal Revenue Service ("IRS"). Allen filed the proof of claim on behalf of the IRS as a surrogate claim pursuant to Fed. R. Bankr. P. 3004 in the amount of $25,169.77, for income taxes, penalties and interest for the tax year ended December 31, 2003 and the first quarter of 2004 (the "Surrogate Claim").[1] The issue before the Court is whether, and to what extent, such claim should be allowed against the estate.

The Court conducted a nonevidentiary hearing on July 18, 2006 at which it took the matter under advisement. The parties agreed to file a statement of stipulated facts and post-hearing briefs,

---

[1] As stated below, the IRS withdrew its proof of claim in this case.

1

all of which were filed by September 21, 2006.[2] The material facts in this matter are not in dispute. The Court now makes the following findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

## II.    FACTS

The Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on April 1, 2004 (the "Petition Date"). The parties stipulated that on April 15, 2004, after the Petition Date, the Debtors voluntarily paid $7,500.00 from post-petition earnings to the IRS in full payment of their 2003 prepetition federal income tax liability.[3] The Debtors did not file their joint federal income tax return for the 2003 taxable year until October 18, 2004. The Debtors paid $7,500.00 towards the 2003 taxes in April, 2004 in order to obtain an automatic six month extension for the 2003 tax return and to avoid the imposition of late-payment penalties.[4] This payment resulted in an overpayment of $879.99, which the Debtors applied to their 2004 tax liability, making the total liability for 2003 $6,620.01. At the time Allen made the $7,500.00 payment, the Trustee had not yet sold the principal asset in this case, the Debtors' residence located in Wellesley, Massachusetts, and it was unclear at

---

[2] The facts are sufficient to decide the issue raised by the Surrogate Claim. The parties, however, did not provide information on whether the Debtors filed joint or separate tax returns for each year in question or the status of their 2005 tax year liabilities. Also, the Court notes that only Allen, individually, and not the Debtors, jointly, responded to the Objection to Claims and participated in the hearing and posthearing briefs on this matter.

[3] In the Debtors' Schedule I-Current Income of Individual Debtor(s), the Debtors listed Allen's employer as Jeffrey L. Allen Assocs., his law firm, and listed no employment for Mrs. Allen. In Item 15 of the Debtors' Schedule B-Personal Property, entitled "Accounts Receivable," the Debtors checked the box indicating "None." The Court notes that Allen originated and collected $7,500 from only two weeks of his post-petition earnings.

[4] It is undisputed that an extension does not protect the taxpayer from late filing penalties unless at least 90% of the tax due is paid with the extension.

2

that point whether the Chapter 7 case would result in anything more than a minimal distribution to creditors.[5]

On or about March 31, 2006, Allen mailed his U.S. Individual Tax Return Form 1040 for the 2004 taxable year, which was received by the IRS on April 3, 2006, reporting a tax liability of $32,696.00 for 2004, but it appears that he did not pay any amounts to the IRS for the first quarter of 2004 with that return. Allen's federal income tax liabilities are determined on the basis of the calendar year, and Allen's 2004 federal income tax year ended on December 31, 2004.

On March 27, 2006 Allen filed the Surrogate Claim pursuant to Fed. R. Bankr. P. 3004 seeking allowance of $25,169.77 as a priority claim (identified as Claim No. 17 on the claims register) under 11 U.S.C. § 507(a)(8). The Surrogate Claim consists of claims for prepetition income taxes, interest and penalties for the 2003 and 2004 tax years as follows: (1) a priority claim for reimbursement of $6,620.01 for 2003 income taxes paid postpetition by Allen to the IRS (the "2003 Tax Payment"); (2) $13,585.09 for first quarter 2004 income taxes; (3) $110.00 for penalties due to underpayment of 2004 prepetition income tax; and (4) $4,854.67 for miscellaneous penalties and interest attributable to the first quarter 2004 taxes.

On April 3, 2006, the IRS filed a proof of claim, which inexplicably was not listed on the claims register, asserting a priority claim for Allen's 2004 tax liability in the amount of $13,585.09 and a general unsecured claim in the amount of $192.00 for related penalties (the "IRS Claim"). On

---

[5] The Debtors listed the value of their residence on Schedule A-Real Property, as $545,000 and listed secured claims on the property totaling $245,874.19 on their Schedule D-Creditors Holding Secured Claims. According to the Debtors' Schedule C-Property Claimed as Exempt, the Debtors asserted a $300,000 homestead exemption in the Property pursuant to Mass. Gen. Laws ch. 188, § 1. On October 11, 2005, the Court allowed the Trustee's Motion to Sell the Property for a purchase price of $620,000.

May 9, 2006, the Trustee filed his Objection to Claims objecting to both the Surrogate Claim and the IRS claim. On June 28, 2006, the IRS filed its response in which it indicated that it filed its claim in error, that it was withdrawing its claim in its entirety and that its records reflected that the Debtors failed to make an election pursuant to 26 U.S.C. § 1398(d)(2)(A) to divide their 2004 tax year into two taxable periods. Also, on July 28, 2006, Allen filed a response to the Objection to Claims in which he asserted the validity of the Surrogate Claim.

### III.    POSITIONS OF THE PARTIES

Although the Trustee's objection to the IRS Claim is moot in light of the IRS's withdrawal of its claim, the Trustee objects to the Surrogate Claim on a number of grounds. First, the Trustee asserts that, with respect to the 2003 Tax Payment, Allen, in effect, is seeking priority subrogation from the estate. Citing 11 U.S.C. § 507(d), the Trustee maintains that the claim for this payment must be disallowed because a party cannot be subrogated to a taxing authority's priority status and may only be subrogated, if at all, to the *amount* of the claim as a general unsecured creditor. Further, the Trustee argues that Allen is not entitled to be subrogated to the IRS's claim for 2003 income taxes as a general unsecured creditor because Allen's postpetition payment of his 2003 income taxes does not meet the requirements for subrogation set forth in 11 U.S.C. § 509. Allen contends that § 509 is inapplicable to the 2003 Tax Payment because Allen does not seek subrogation for the payment but rather "reimbursement" on general equitable principles. The IRS took no position with respect to the 2003 Tax Payment because it did not file a claim against the estate for that liability which the Debtors voluntarily paid.

With respect to the portion of the Surrogate Claim through which Allen seeks allowance of a priority claim for the 2004 prepetition income taxes, the Trustee asserts that the claim should be

4

disallowed in its entirety as a result of the Debtors' failure to make the election under 26 U.S.C. § 1398(d)(2)(A) (the "Election"). That section of the Internal Revenue Code allows an individual Chapter 7 debtor to divide the tax year in which he files a bankruptcy petition into two separate tax years, the effect of which would be to render the tax liability for the prepetition period a claim against the estate. The IRS supports the Trustee's position on this issue and asserts that in the absence of an Election by the Debtors, the portion of the Surrogate Claim relating to the first quarter of the 2004 tax year should be deemed a postpetition tax liability, leaving the IRS with a claim against the Debtors individually and not against the estate.[6] Allen asserts that the 2004 tax portion of the claim should be allowed as a priority claim against the estate pursuant to 11 U.S.C. § 507(a)(8)(A)(iii) as a tax "assessable" after the commencement of the case.

## IV.    DISCUSSION

### A.    The Priority Claim for 2003 Income Taxes

As noted above, the Trustee asserts that the portion of the Surrogate Claim for the 2003 Tax Payment should be disallowed as a priority claim pursuant to 11 U.S.C. § 507(d) which provides, in part: "an entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection . . . (a)(8). . . of this section is not subrogated to the right of the holder of such claim to priority under such subsection." 11 U.S.C. § 507(d); *see also* In re Fiesole Trading Corp., 315 B.R. 198, 201 n.5 (Bankr. D. Mass. 2004)(although the IRS claim at issue was entitled to priority under 11 U.S.C. § 507(a)(8), the principals of the debtor were not entitled to the IRS' priority status and "could only be subrogated, if at all, to the *amount* of the claim as general unsecured creditors.").

---

[6] Because the IRS withdrew the IRS Claim, Allen contends that it has no standing to participate in the claim objection with the Trustee. However, the Court finds the IRS's reasons for the withdrawal of its claim to be instructive and will allow its participation in this matter.

Additionally, the Trustee contends that Allen is not entitled to be subrogated to the IRS's claim for 2003 income taxes as a general unsecured creditor because he does not meet the requirements for subrogation under 11 U.S.C. § 509 which provides, in relevant part: "... an entity that is *liable with the debtor* on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment." 11 U.S.C. § 509(a) (emphasis supplied). In order to qualify for subrogation under § 509, Allen must demonstrate that he was "liable with the debtor" on the debt on which he seeks subrogation. In this case, Allen paid his 2003 tax liability to the IRS directly; he cannot satisfy the "liable with the debtor" requirement because Allen cannot be liable with himself. Allen concedes that he cannot be liable with himself but asserts that subrogation principles and § 509 are inapplicable in this matter because he is merely seeking reimbursement, "in the normal English language usage of the word." Allen does not rely on 11 U.S.C. § 502(e), which contains a similar "liable with the debtor" predicate for reimbursement, or on any other statutory basis for the claimed entitlement. Rather, he contends that, in the absence of any statutory authority to *deny* a claim for reimbursement, the claim should be allowed on general equitable principles.

The restrictions imposed by 11 U.S.C. §§ 502 and 509 preclude Allen from obtaining a refund of the 2003 Tax Payment through statutory reimbursement or subrogation. Instead, Allen proposes to be repaid the amount he voluntarily advanced to avoid the imposition of late payment penalties based upon their theory of "equitable reimbursement." Under this theory, Allen would be repaid on a priority basis before any distributions to the general unsecured creditors. The Court finds Allen's proposal to be tantamount to an unwarranted subordination of the general unsecured creditors' claims and an impermissible adjustment of Congress's statutory priority scheme. *See* U.S.

6

v. Noland, 517 U.S. 535, 536, 116 S. Ct. 1524, 1525 (1996)("[T]he bankruptcy court may not equitably subordinate claims on a categorical basis in derogation of Congress's scheme of priorities."). This is especially the case where, as here, there has been no alleged inequitable conduct by the general unsecured creditors. Allen points out that, had the Debtors not made the 2003 Tax Payment, the estate would have paid the amount as a priority claim. Although the Court is sympathetic to Allen's predicament, there is no cause to make him whole at the expense of the general unsecured creditors. "[A]lthough [the bankruptcy court] is a court of equity, it is not free to adjust the legally valid claim of an innocent party who asserts the claim in good faith merely because the court perceives that the result is inequitable." Id. at 539, 1526 (quoting DeNatale & Abram, *The Doctrine of Equitable Subordination as Applied to Nonmanagement Creditors*, 40 Bus. Law, 417, 428 (1985)); see also Merrimac Paper Co., Inc. v. Harrison (In re Merrimac Paper Co., Inc.), 420 F.3d 53, 65 (1st Cir. 2005)("[B]ankruptcy Courts may not categorically subordinate classes of claims based on generalized policy considerations."); Burden v. United States, 917 F.2d 115, 122 (3d Cir. 1990)(Alito, J., concurring in part and dissenting in part)("Decisions about the treatment of categories of claims in bankruptcy proceedings. . . are not dictated or illuminated by principles of equity and do not fall within the judicial power of equitable subordination."). Accordingly, the Court sustains the Trustee's Objection to Claims with respect to the 2003 Tax Payment component of the Surrogate Claim.

B.     The Priority Claim for 2004 Income Taxes

Allens asserts that the 2004 tax claim portion of the Surrogate Claim should be allowed as a priority claim and paid from the estate pursuant to 11 U.S.C. § 507(a)(8)(A)(iii) which provides for an eighth priority treatment of allowed unsecured tax claims of governmental units to the extent

7

such claims are for:

> (A) a tax on or measured by income or gross receipts--
>
>> (iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but *assessable*, under applicable law or by agreement, after, the commencement of the case.

11 U.S.C. § 507(a)(8)(A)(iii)(emphasis supplied).[7] The Trustee and the IRS counter that notwithstanding § 507(a)(8)(A)(iii), the Debtors' failure to make the tax Election is fatal to Allen's ability to assert a claim for 2004 income taxes against the estate.

In individual Chapter 7 and 11 cases, debtors may make an Election to divide the taxable year in which the bankruptcy case is commenced into two "short" taxable years of less than twelve months: the first one ending on the day before the petition date and the second one beginning on the petition date. 26 U.S.C. § 1398(d)(2)(A). A debtor must make this Election on or before the 15th day of the fourth full month following the petition date. 26 U.S.C. §§ 1398(d)(2)(D) and 6072(a). In the instant case, the Debtors would have had to have made the Election by August 15, 2004. "When a debtor elects to partition the tax year under section 1398, the federal income tax liability for the first short taxable year becomes an allowable claim against the bankruptcy estate as a claim arising before the commencement of the case." In re Johnson, 190 B.R. 724, 726 (Bankr. D. Mass.

---

[7] The Court cites the statute as it was worded prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 which governs cases filed on or after October 17, 2005. Sections 523(a)(1)(B) and (C) refer to taxes for which a debtor fails to file a return, filed a late or fraudulent return, or willfully attempts to evade or defeat taxes. At the nonevidentiary hearing held on July 18th, the Court *sua sponte* raised the issue of whether the Debtors' 2004 tax return, which was filed in March 2006, implicated § 523(a)(1)(B) and therefore disqualified Allen from asserting § 507(a)(8)(A)(iii). No party addressed this issue in their post-hearing briefs or sufficiently addressed the facts concerning whether the Debtors secured an extension for the 2004 tax return in the Stipulation of Facts. The Court, therefore, does not have sufficient information to make a determination regarding the applicability of § 523(a)(1)(B).

8

1995)(citations omitted). "A debtor's failure to make an election under section 1398(d) makes the entire tax liability a post-petition liability." Id.

In the present case, neither of the Debtors made the Election to split the 2004 taxable year. Had the Debtors made the Election, their tax liability for the first short taxable year would have been an allowable claim against the bankruptcy estate entitled to priority under § 507(a)(8). Id. In the absence of an Election, no part of a debtor's tax liability from the year in which the bankruptcy case commenced is collectible from the estate, but is collectible directly from the individual debtor. Id.; *see also* In re Turboff, 93 B.R. 523, 525 (Bankr. S.D. Tex. 1988)(where a debtor failed to make an Election, the debtor's tax liability for the tax year ending after the petition date was not an allowable claim against the estate but was only collectible directly from the individual debtor); In re Haedo, 211 B.R. 149, 152 (Bankr. S.D.N.Y. 1997)("If the debtor makes the election, the tax liability attributable to the prepetition year constitutes a priority claim against the estate; but if he does not, the entire liability for the year of the bankruptcy filing is a claim against the debtor but is not collectible from the estate.").

Allen argues that the Johnson, Turboff and Haedo holdings are not controlling precedent in this case because the applicability of 11 U.S.C. § 507(a)(8)(A)(iii) was not addressed by the courts in those cases and because § 507(a)(8)(A)(iii) trumps 26 U.S.C. § 1398(d)(2)(A) for equitable and practical reasons. Allen contends that it was not until well after the deadline for making the Election that the Debtors became certain that the estate would have sufficient funds to make payment on income taxes incurred during the first quarter of 2004. Allen asserts that § 507(a)(8)(A)(iii) applies and that the portion of the Surrogate Claim for the first quarter 2004 taxes, penalties and interest should be an allowed priority claim.

9

In support of his argument, Allen relies on Missouri Dept. of Revenue v. L.J. O'Neill Shoe Co. (In re L.J. O'Neill Shoe Co.), 64 F.3d 1146 (8th Cir. 1995). In that case, a corporate debtor and its affiliates filed Chapter 11 petitions on January 24, 1991. The Missouri Department of Revenue (the "DOR") filed claims for corporate income taxes for taxes owed with respect to the debtors' fiscal year ended February 23, 1991, a date about one month after the debtors' petition date. The DOR sought payment of the claims as administrative expenses. The O'Neill Shoe court considered the issue of whether portions of the DOR's corporate income tax claims that related solely to the debtors' prepetition income qualified as administrative expense claims under 11 U.S.C. § 503(b)(1)(B)(i) which affords administrative expense status to certain tax claims which are "incurred by the estate" and are not "specified in section 507(a)(8)."[8] Id. The court determined that, despite the language in § 507(a)(7)(A)(iii), which refers to taxes "assessable . . . after the commencement of the case," the statute can be read to address only prepetition taxable activity or events. O'Neill Shoe at 1151; see also Small Business Admin. v. Preferred Door Co., Inc. (In re Preferred Door Co)., 990 F.2d 547, 549 (10th Cir. 1993)(noting that § 507(a)(7), deals with prepetiton taxes). The O'Neill Shoe court held that only that portion of the tax claim attributable to the debtor's prepetition income was within the scope of § 507(a)(7)(A)(iii) and the balance of the claim would be eligible for treatment as an administrative expense. O'Neill Shoe at 1151. That court approved the lower court's allocation of tax liability between the prepetition and postpetition periods. See also United States v. Hillsborough Holdings Corp., (In re Hillsborough Holdings Corp.), 116 F.3d 1391 (11th Cir. 1997)(permitting Chapter 11 corporate debtors to divide a tax claim into an administrative

---

[8] O'Neill Shoe and the below cited In re Preferred Door and In re Hillsborough Holdings Corp. cases all addressed 11 U.S.C. § 507(a)(7)(A)(iii), the predecessor to the present § 507(a)(8)(A)(iii).

10

expense "portion" for taxes attributable to the postpetition period and a seventh priority tax "portion" for taxes attributable to income earned during the prepetition period).

Allen advances the holdings of O'Neill Shoe and Hillsborough Holdings because those courts permitted the allocation of a single tax year liability between pre- and postpetition periods. The above cases relied upon by Allen, however, are corporate cases, not individual cases and the ability to make an Election is unavailable to corporations. In re Johnson 190 B.R. at 727. The Court cannot ignore, to the detriment of the unsecured creditors, the Debtors' now foreclosed opportunity to divide their 2004 tax year into pre and postpetition periods. The facts of this case are similar to Johnson where "[t]he allocation scheme advocated by the Debtors circumvents their failure to make the election afforded them by section 1398(d)(2)." Id.

Allen's argument also was flatly rejected in the case of In re Prativadi, 281 B.R. 816 (Bankr. W.D.N.Y. 2002), in which individual debtors commenced a Chapter 7 case in November of 2000 and failed to make an Election. The debtors in that case asserted that § 507(a)(8)(A)(iii) entitled the taxing authorities to priority claims for the prepetition portion of the income taxes due from them for the calendar year 2000, because calendar year 2000 taxes could be assessed after the filing of the petition and that nothing in 26 U.S.C. § 1398 specifically required the Election to be made in order for the provisions of that section to supercede the treatment of the claim afforded by § 507(a)(8)(A)(iii). The Prativadi court held that ". . . it was the intention of Congress that if an individual Chapter 7 or 11 debtor does not timely make the split year election under § 1398, no portion of the debtor's pre-petition income tax liability for the year ending after the filing of the petition can be assessed or claimed against that debtor's asset bankruptcy estate; it can only be assessed against the debtor." Id. at 819.

11

The case of In re McCready, 255 B.R. 834 (Bankr. M.D. Tenn. 1999), is also instructive and factually similar to the present case. In McCready, an individual Chapter 7 debtor filed her bankruptcy petition on May 9, 1997 and made no short year Election. The debtor paid her entire 1997 tax liability to the IRS prior to April 15, 1998 to avoid the assessment of interest and penalties and filed a surrogate claim on behalf of the IRS asserting a priority claim for the prepetition portion of the 1997 taxes pursuant to § 507(a)(8)(A)(iii). The Chapter 7 trustee sought disallowance of the claim on the grounds that the debtor did not make the Election. The debtor asserted that her failure to make the Election was irrelevant to the allowance of the priority claim under § 507(a)(8)(A)(iii) claim. The McCready court disagreed and held that because the debtor had paid her entire 1997 tax liability to the IRS, it had no "right to payment" as required by 11 U.S.C. § 101(5), which defines the term "claim." Id. at 836. Furthermore, the court held that because the IRS had no claim, the debtor could not rely on § 507(a)(8)(A)(iii) which affords priority status to "claims" of governmental units. Id. As in McCready, the IRS currently asserts no right to payment for the 2004 taxes in the Debtors' case because it withdrew its proof of claim. Further, the IRS's stated position in its briefs and at the nonevidentiary hearing is that it has a claim against the Debtors individually and not against the estate.

This Court cannot ignore the requirements of 26 U.S.C. § 1398(d)(2)(D)[9] simply because the Debtors were unaware that their case would be an asset case until after the deadline to file the Election. Adoption of Allen's theory would have the effect of nullifying the provisions of 26 U.S.C. § 1398(d)(2)(D) which mandate the filing deadline and irrevocability of the Election. The Court is

---

[9] That section provides that "[a]n election under subparagraph (A) or (B) may be made only on or before the due date for filing the return for the taxable year referred to in subparagraph (A)(i). Any such election, once made, shall be irrevocable." 26 U.S.C. § 1398(d)(2)(D)

12

in agreement with the court in In re Turboff which rejected the argument of an individual Chapter 11 debtor who failed to timely make the Election claiming he lacked the pertinent information to do so. "[T]he reasons for the Debtor's failing to make the election are irrelevant to the application of § 1398 and this court's determination." In re Turboff, 93 B.R. at 526. The Court is also unpersuaded by Allen's assertion that there will be no prejudice in this case by allowance of the claim for 2004 taxes because the IRS can file a priority proof of claim at any time prior to the date when the Trustee commences distribution of funds under 11 U.S.C. § 726. Payment of the Debtors' 2004 tax liability from estate funds simply because there are available funds to satisfy the claim would be in derogation of the statutory priority scheme of 11 U.S.C. § 507 and would result in definite prejudice to the Debtors' unsecured creditors. The Court finds that the 2004 tax portion of the Surrogate Claim is not entitled to priority treatment under § 507(a)(8)(A)(iii) and finds that portion of the claim to be a liability of the Debtors individually and not the estate. Accordingly, the Court disallows that portion of the claim in its entirety. With respect to the penalties and interest portion of the Surrogate Claim relating to the 2004 taxes, the Court finds that such amounts are derivative of the underlying 2004 tax liability and disallows the portion of the Surrogate Claim relating to those amounts.

## V.  CONCLUSION

For the above stated reasons, the Court shall enter an order sustaining the Trustee's Second Set of Objections to Claims with respect to all portions of the Surrogate Claim and disallowing the claim in its entirety.

Dated: December 11, 2006                    By the Court,

                                            _____
                                            Joan N. Feeney
                                            United States Bankruptcy Judge

cc: Gary W. Cruickshank for Jeffrey Allen, Mark G. DeGiacomo, Chapter 7 Trustee, Nina P. Ching, Esq., for the IRS